ORDERED.

Dated: January 31, 2018

_____
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ADVANCED TELECOMMUNICATION NETWORK, INC., | ) ) ) | Case No. 6:03-bk-00299-KSJ<br>Chapter 11 |
| Debtor. | ) ) ) | |
| ADVANCED TELECOMMUNICATION NETWORK, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Adversary No. 6:05-ap-00006-KSJ |
| FLASTER/GREENBURG, PC, and PETER R. SPIRGLE, | ) ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION
TO DENY DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT ON COUNTS II – VII</u>**
*(Factual disputes exist as to reasonably equivalent value.)*

Defendants, Flaster/Greenberg, P.C. and Peter Spirgel[1] (collectively, "Flaster"), seek summary judgment[2] on Counts II through VII asserted by Plaintiff/ Debtor, Advanced Telecommunication Network, Inc. ("ATN"), in its Second Amended Complaint.[3]

From 1996 through 1999, Flaster represented Daniel Allen, a former shareholder of ATN, in litigation against a co-equal voting shareholder and President of ATN, Gary Carpenter. The parties settled their dispute with ATN paying millions to Flaster, who received $1.35 million for attorney fees and costs, with the balance going to Daniel Allen and his brother David Allen, a non-voting shareholder of ATN.

In Counts II through VII of the Second Amended Complaint, ATN asserts its payment of the $1.35 million attorney fees to Flaster are avoidable fraudulent transfers under the Bankruptcy Code[4] and New Jersey law.[5] Flaster seeks summary judgment[6] as a matter of law on these counts arguing ATN received reasonably equivalent value for paying these attorney fees because ATN's Bylaws obligated ATN to indemnify Daniel Allen for the fees he owed to Flaster. The Bankruptcy Court recommends that the District Court deny Flaster's Motion for Summary Judgment on Counts II through VII.

## Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] Peter Spirgel was an attorney at the Flaster/ Greenberg firm.
[2] Doc. Nos. 240, 260 (ATN's Reply), and 268 (Flaster's Response).
[3] Doc. No. 139.
[4] All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101 (2012) *et. seq.*
[5] Doc. No. 139 at ¶¶ 101-130.
[6] The Court will treat Flaster's Motion for Summary Judgment on Counts II through VII as a request for a "report and recommendation" because the District Court will try this adversary proceeding before a jury and the issues involve mixed core and non-core claims. As such, the District Court, not the Bankruptcy Court, must issue any Final Judgment. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 191 L. Ed. 2d 911 (2015); *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 189 L. Ed. 2d 83 (2014); *Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011).

matter of law."[7] The moving party must establish the right to summary judgment.[8] A "material" fact is one that "might affect the outcome of the suit under the governing law."[9] A "genuine" dispute means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10] Once the moving party has met its burden, the nonmovant must set forth specific facts showing there is a genuine issue for trial.[11] In determining entitlement to summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[12]

## Background

Because the events occurred in 1999, almost 20 years ago, and because substantial litigation precedes this dispute, a brief discussion of the past litigation is merited. Daniel Allen and Gary Carpenter, who equally shared all of ATN's voting shares, founded ATN in 1989 as a long-distance reseller of telecommunication services.[13] The company purchased long distance telephone service in bulk from larger carriers and resold it to their customers. A bitter management dispute erupted between Carpenter, ATN's President, and Daniel Allen resulting in hard fought litigation in New Jersey. A trial commenced in November 1998. Flaster represented Daniel Allen.

Daniel Allen and Carpenter signed a handwritten settlement agreement on December 23, 1998, and then a more formal written settlement agreement on January 12, 1999. ATN was to pay Flaster $1.35 million for the Allen attorney fees and costs in the New Jersey litigation. ATN also

---

[7] Fed. R. Civ. P. 56(a).
[8] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).
[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *Find What Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011).
[10] *Anderson*, 477 U.S. at 248.
[11] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 10 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).
[12] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).
[13] The background is largely parsed from the Eleventh Circuit of Appeals opinion of *Advanced Telecommunication Network, Inc. v. Allen (In re Advanced Telecommunication Network, Inc.)*, 490 F. 3d 1325 (11th Cir. 2007).

paid the Allens an additional $6.25 million in settlement of their dispute with Carpenter.[14] The monies were paid directly by ATN to Flaster who kept $1.35 million for its fees and sent the balance to the Allens.

After the settlement, Carpenter was the sole shareholder of ATN and remained President for a short time. Beginning in 1995 and simultaneously with the shareholder litigation, ATN had disputed with a competitor, WATS/800, Inc., a company controlled by Damian Freeman. In October 2000, Carpenter settled this dispute relinquishing his interest in ATN to companies controlled by Damian Freeman, who still controls ATN today.

ATN/Freeman filed this Chapter 11 bankruptcy on January 10, 2003, and confirmed a Plan of Reorganization[15] contemplating litigation against the Allens[16] and their lawyers to recover the millions paid in the 1999 settlement between the Allens and Carpenter. Freeman relentlessly has pursued his lawsuits beginning first with the Allens and now is turning his attention to Flaster. The multi-year dispute has traveled to the Eleventh Circuit Court of Appeals twice[17] and, for the Allens' individual bankruptcy cases in New Jersey, the Third Circuit Court of Appeals.[18] Although the Eleventh Circuit Court of Appeals has finally avoided the transfer of the $6 million paid to the Allens,[19] no court has avoided the transfer of the $1.35 million fees paid to Flaster.

---

[14] For example, exhibits show that wire transfers to Flaster occurred on January 12, 1999 ($1.25 million), January 29, 1999 ($250,000), and June 1, 1999 ($6 million). Doc. 180, Ex. 37. The settlement agreement also contained other terms, such as releases, that may have transferred additional value between the parties.

[15] Doc. No. 1 in Main Case No. 6:03-bk-00299-KSJ. Doc. No. 153 in the Main Case is the Chapter 11 Plan of Reorganization. The Court confirmed the Plan on June 22, 2004. Doc. No. 215 in the Main Case.

[16] Adversary Number 6:03-ap-00122-KSJ, Advanced Telecommunication Network, Inc. v. Daniel W. Allen and David D. Allen.

[17] *In re Advanced Telecomm. Network, Inc.*, 429 F. App'x 857 (11th Cir. 2011); *In re Advanced Telecomm. Network, Inc.*, 490 F.3d 1325 (11th Cir. 2007).

[18] *In re Allen*, 768 F.3d 274 (3d Cir. 2014). Daniel Allen's individual bankruptcy case was filed in the United States Bankruptcy Court for the District of New Jersey (Case No. 11-37671 (GMB)). Daniel's wife, Stacy Allen, filed an individual bankruptcy case in the United States Bankruptcy Court for the District of New Jersey (Case No. 13-14348 (GMB)).

[19] Doc. No. 330 in 6:03-ap-00122-KSJ.

**Factual Disputes Exist as to Whether ATN Received Reasonably Equivalent Value**

Flaster argues it provided legal services to Daniel Allen in the Allen/ Carpenter litigation and, because ATN had to indemnify him for these costs under ATN's Bylaws, Flaster provided "reasonably equivalent value" in exchange for the $1.35 million payment. "New Jersey law does not offer a universal definition of 'reasonably equivalent value.'"[20] Similarly, the Bankruptcy Code does not define "reasonably equivalent value." The Third Circuit Court of Appeals noted, "[t]his is probably as it should be, since reasonably equivalent value is not an esoteric concept: a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'"[21] "[C]ourts have recognized valuation considerations are inherently fact-laden, turning on the case-specific circumstances surrounding [the] decision to enter into the challenged transaction."[22]

Another Florida bankruptcy court, conducting a reasonably equivalent value analysis under the Bankruptcy Code and Florida law, stated that "courts generally consider such factors as the 'good faith of the parties, the disparity between the fair value of the property and what the debtor actually received, and whether the transaction was at arm's length.'"[23] As all these cases point out, disputed factual issues are usually at the center of the question of "reasonably equivalent value."

ATN's Bylaws, allegedly adopted in 1991,[24] include an indemnification provision:

> Indemnification of Directors and Officers: … [T]he corporation shall indemnify any person who is or was a director, officer, employee or other agent of the corporation … who was or is involved in any manner (including without limitation, as a party or witness) in any threatened, pending or completed investigation, claim, action, suit or proceeding, whether civil, criminal, administrative, arbitrative, legislative or investigative (including, without limitation, any action, suit or proceeding by or in the right of the Corporation to procure a judgment in its favor (a "Proceeding"), or who is threatened with being so involved, by reason of the fact that he or she was a director or officer of the Corporation, or while serving as a director or officer of the Corporation, is or was at the request of the Corporation also

---

[20] *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007).
[21] *Id.*
[22] *O'Halloran v. Harris Corp. (In re Teltronics, Inc.)*, 540 B.R. 481, 486 (Bankr. M.D. Fla. 2015) (quoting *In re Calvillo*, 263 B.R. 214, 220 (W.D. Tex. 2000)) (internal quotation marks omitted).
[23] *In re Universal Health Care Grp., Inc.*, 560 B.R. 594, 602 (Bankr. M.D. Fla. 2016).
[24] Doc. No. 240, Exh. A, p. 4.

serving as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise (including, without limitation, any employee benefit plan) against all expenses **(including attorneys' fees)**, judgments, fines, penalties, excise taxes, and amounts paid in settlement and **reasonably incurred by the indemnitee in connection with such Proceeding**, provided that, there shall be no indemnification hereunder with respect to any settlement or other nonadjudicated disposition of any threatened or pending Proceeding unless the Corporation has given its prior consent to such settlement or disposition. The right of indemnification created by this Article shall be a contract right enforceable by an Indemnitee against the Corporation, and it shall be exclusive of any other rights to which an Indemnitee may otherwise be entitled. …[25]

When Gary Carpenter and Daniel Allen settled their dispute, the parties signed a "Settlement, Stock Purchase, and Escrow Agreement" ("Settlement Agreement").[26] The Settlement Agreement acknowledged that ATN's Bylaws[27] included an indemnification provision:

**Payment of Legal Fees.** ATN acknowledges that its Bylaws require the indemnification of [Daniel W. Allen] and [David Allen] for legal fees and associated costs they have incurred in connection with the litigation described in section 1. ATN has paid or shall pay the following amounts in full satisfaction of such indemnification obligation and in consideration for execution by the Allen Parties of a release and stipulation of dismissal of ATN from the lawsuit described in Section 1. … ATN has paid $1,000,000.00 contemporaneous with the execution of this Agreement, receipt of which is hereby acknowledged. … ATN shall pay an additional $250,000.00 no later than January 15, 1999. … ATN shall pay an additional $100,000.00 no later than December 31, 1999.[28]

Flaster maintains this indemnification provision in the Bylaws and the acknowledgement of the indemnification obligation in the Settlement Agreement prove ATN was contractually obligated to pay any and all legal fees Daniel Allen owed to Flaster in his litigation with Gary Carpenter. So, as Flaster argued, ATN received reasonably equivalent value by satisfying this contractual indemnification obligation.

ATN's primary argument is it had no indemnification liability to pay Flaster's fees if the fees incurred were "unreasonable" or "unreasonably incurred." ATN also makes an estoppel

---

[25] Doc. No. 240, Exh. D, pp. 21-22 (emphasis provided). The indemnification provision was acknowledged in the settlement agreement also at the center of this dispute. See Doc. No. 240, Exh. J, p. 16 ("Payment of Legal Fees"). Doc. No. 240, Exhs. B, C, and K (deposition transcripts).
[26] Doc. No. 240, Exh. J.
[27] Doc. No. 240, Exh. J, p. 16.
[28] *Id.*

argument that Flaster may not rely on the Bylaws because Flaster previously argued on behalf of its client that the Bylaws were invalid.[29] If no indemnification obligation existed, ATN then argues any fees paid by ATN to Flaster under the Settlement Agreement could not constitute "reasonably equivalent value."

The Court cannot resolve these issues as a matter of law. Factual disputes exist whether the fees paid by ATN to Flaster were "reasonably incurred" by Daniel Allen and, more importantly, whether ATN had any obligation to indemnify Daniel Allen under ATN's Bylaws in the first place. If the fees related to Daniel Allen's service as director of ATN, as opposed to his acting as a shareholder in his dispute with Carpenter, ATN may have an indemnification obligation to pay legal fees. If so, the legal fees may constitute reasonably equivalent value. But these questions are inherently fact-laden and disputed. Facts should be construed in the light most favorable to ATN, and ATN should be allowed to present its case for the fact finder to consider. The Court recommends that the District Court deny Flaster's Motion because factual disputes preclude judgment as a matter of law.

###

Attorney, Dennis Waggoner, is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

---

[29] ATN argues the Defendants have changed their position from a previous proceeding. ATN contends Defendants represented Daniel Allen in previous litigation and argued—on behalf of their client—the Bylaws were never adopted. Now, in the Defendants' Motion for Summary Judgment, ATN argues Flaster changed its position and relies on the Bylaws to prove ATN had a contractual obligation to pay Daniel Allen's attorneys' fees. ATN argues: (1) the fees incurred by Daniel Allen were unreasonable because the Defendants were advocating a position (on behalf of their client) in the previous litigation that was "false" (i.e. the Bylaws were invalid); and (2) the Bylaws were invalid as the Defendants argued (on behalf of their client) so the invalid Bylaws cannot be relied upon now. Defendants counter ATN's points by stating that the Defendants themselves have never taken a position in a prior proceeding that the Bylaws were invalid, and a law firm is not bound by the positions it advocates on behalf of its clients. Defendants point to deposition transcripts of two parties, Daniel Allen and Gary Carpenter, who both testified the Bylaws were adopted.