ORDERED.

Dated:  January 31, 2018

_____
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) <br> ) <br> ADVANCED TELECOMMUNICATION ) <br> NETWORK, INC., ) <br> ) <br> Debtor. ) <br> ) | Case No. 6:03-bk-00299-KSJ <br> Chapter 11 |
| ADVANCED TELECOMMUNICATION ) <br> NETWORK, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FLASTER/GREENBURG, PC, and PETER ) <br> R. SPIRGLE, ) <br> ) <br> Defendants. ) | Adversary No. 6:05-ap-00006-KSJ |

**REPORT AND RECOMMENDATION
TO DENY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON COUNTS VIII AND IX**
*(Factual disputes exist as to damages on tort claims.)*

Defendants, Flaster/Greenberg, P.C. and Peter Spirgel[1] (collectively, "Flaster"), seek summary judgment[2] on Counts VIII and IX asserted by Plaintiff/ Debtor, Advanced Telecommunication Network, Inc. ("ATN"), in its Second Amended Complaint.[3]

From 1996 through 1999, Flaster represented Daniel Allen, a former shareholder of ATN, in litigation against a co-equal voting shareholder and President of ATN, Gary Carpenter. The parties settled their dispute with ATN paying millions to Flaster, who received $1.35 million for attorney fees and costs, and the balance going to Daniel Allen and his brother David Allen, a non-voting shareholder of ATN.

In Counts VIII and IX of the Second Amended Complaint under New Jersey law, ATN asserts that, in facilitating this settlement, Flaster helped Daniel Allen breach his fiduciary duty owed to ATN and committed civil conspiracy to harm ATN and its creditors. Flaster seeks summary judgment[4] as a matter of law alleging ATN cannot prove its damages because, in 2000, ATN released Carpenter from all claims, including those related to the Allen/Carpenter settlement agreement. The Bankruptcy Court recommends that the District Court deny Plaintiff's Motion for Summary Judgment on Counts VIII and IX.

## Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] The moving party must establish the right to summary judgment.[6] A "material"

---

[1] Peter Spirgel was an attorney at the Flaster/ Greenberg firm.
[2] Doc. Nos. 241, 264, and 269.
[3] Doc. No. 139.
[4] The Court will treat Flaster's Motion for Summary Judgment on Counts VIII and IX as a request for a "report and recommendation" because the District Court will try this adversary proceeding before a jury and the issues involve mixed core and non-core claims. As such, the District Court, not the Bankruptcy Court, must issue any Final Judgment. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 191 L. Ed. 2d 911 (2015); *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 189 L. Ed. 2d 83 (2014); *Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011).
[5] Fed. R. Civ. P. 56(a).
[6] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).

fact is one that "might affect the outcome of the suit under the governing law."[7] A "genuine" dispute means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8] Once the moving party has met its burden, the nonmovant must set forth specific facts showing there is a genuine issue for trial.[9] In determining entitlement to summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[10]

## Background

Because the events occurred in 1999, almost 20 years ago, and because substantial litigation precedes this dispute, a brief discussion of the past litigation is merited. Daniel Allen and Gary Carpenter, who equally shared all of ATN's voting shares, founded ATN in 1989 as a long-distance reseller of telecommunication services.[11] The company purchased long distance telephone service in bulk from larger carriers and resold it to their customers. A bitter management dispute erupted between Carpenter, ATN's President, and Daniel Allen resulting in hard fought litigation in New Jersey. A trial commenced in November 1998. Flaster represented Daniel Allen.

Daniel Allen and Carpenter signed a handwritten settlement agreement on December 23, 1998, and then a more formal written settlement agreement on January 12, 1999. ATN was to pay Flaster $1.35 million for the Allens' attorney fees and costs in the New Jersey litigation. ATN also paid the Allens an additional $6.25 million in settlement of their dispute with Carpenter.[12] The

---

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *Find What Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011).
[8] *Anderson*, 477 U.S. at 248.
[9] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 10 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, (1986).
[10] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).
[11] The background is largely parsed from the Eleventh Circuit of Appeals opinion of *Advanced Telecommunication Network, Inc. v. Allen (In re Advanced Telecommunication Network, Inc.)*, 490 F. 3d 1325 (11th Cir. 2007).
[12] For example, exhibits show that wire transfers to Flaster occurred on January 12, 1999 ($1.25 million), January 29, 1999 ($250,000), and June 1, 1999 ($6 million). Doc. 180, Ex. 37. The settlement agreement also contained other terms, such as releases, that may have transferred additional value between the parties.

monies were paid directly by ATN to the Flaster who kept $1.35 million for its fees and sent the balance to the Allens.

After the settlement, Carpenter was the sole shareholder of ATN and remained President for a short time. Beginning in 1995 and simultaneously with the shareholder litigation, ATN had disputed with a competitor, WATS/800, Inc., a company controlled by Damian Freeman. In October 2000, Carpenter settled this dispute relinquishing his interest in ATN to companies controlled by Damian Freeman, who still controls ATN today.

ATN/Freeman filed this Chapter 11 bankruptcy on January 10, 2003, and confirmed a Plan of Reorganization[13] contemplating litigation against the Allens[14] and their lawyers to recover the millions paid in the 1999 settlement between the Allens and Carpenter. Freeman relentlessly has pursued his lawsuits beginning first with the Allens and now is turning his attention to Flaster. The multi-year dispute has traveled to the Eleventh Circuit Court of Appeals twice[15] and, for the Allens' individual bankruptcy cases in New Jersey, the Third Circuit Court of Appeals.[16]

## Material Factual Disputes Exist as to ATN's Tort Damages

Flaster argues that summary judgment is appropriate under the two alleged tort claims because ATN abandoned any right to prove damages, an essential element of both torts claims, when Freeman/ATN voluntarily cancelled any debt due to ATN from Carpenter in 2000. The argument goes like this: In 1999, under the Allen/Carpenter settlement agreement,[17] ATN lent Carpenter $7.35 million to pay Flaster and to buy the outstanding shares of ATN stock from Daniel

---

[13] Doc. No. 1 in Main Case No. 6:03-bk-00299-KSJ. Doc. No. 153 in the Main Case is the Chapter 11 Plan of Reorganization. The Court confirmed the Plan on June 22, 2004. Doc. No. 215 in the Main Case.
[14] Adversary Number 6:03-ap-00122-KSJ, Advanced Telecommunication Network, Inc. v. Daniel W. Allen and David D. Allen.
[15] *In re Advanced Telecomm. Network, Inc.*, 429 F. App'x 857 (11th Cir. 2011); *In re Advanced Telecomm. Network, Inc.*, 490 F.3d 1325 (11th Cir. 2007).
[16] *In re Allen*, 768 F.3d 274 (3d Cir. 2014). Daniel Allen's individual bankruptcy case was filed in the United States Bankruptcy Court for the District of New Jersey (Case No. 11-37671 (GMB)). Daniel's wife, Stacy Allen, filed an individual bankruptcy case in the United States Bankruptcy Court for the District of New Jersey (Case No. 13-14348 (GMB)).
[17] Doc. No. 241, Exh. H, pages 47-48.

and David Allen.[18] Carpenter agreed to repay ATN for this loan. The next year, in 2000, Freeman acquired ATN when Carpenter agreed to settle a dispute between ATN and one of Freeman's companies, WATS/800, Inc. ATN, now under Freeman's control, gave Carpenter a Debt Cancellation and Release Agreement[19] that absolved him of any liability to ATN, including the monies allegedly lent to him by ATN to purchase the Allens' stock. Flaster argues this Debt Cancellation and Release Agreement breaks the causation chain and prevents ATN from proving damages for their alleged tort claims asserted in Counts VIII and IX. If ATN has forgiven Carpenter, Flaster argues, ATN cannot now seek damages for torts related to the earlier settlement between Carpenter and the Allens.

Flaster is correct both alleged tort claims require ATN to establish causational damages. A claim for aiding and abetting a breach of fiduciary duty under New Jersey law, as asserted in Count VIII, requires showing: "(1) a breach of fiduciary duty; (2) the defendant's knowledge of and substantial assistance in that breach; and (3) *damages resulting from the breach*."[20] To establish a claim for civil conspiracy under New Jersey law, as alleged in Count IX, ATN must show: "'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and *an overt act that results in damage*.'"[21]

[space intentionally left blank]

---

[18] ATN contends ATN, not Carpenter, purchased the ATN stock. Doc. No. 264, page 3-4. They, however, submitted no supporting evidence to support this argument. ATN just relies on prior judicial rulings. *Brandt v. Bassett (In re Se. Banking Corp.)*, 69 F.3d 1539, 1552 (11th Cir. 1995) (collateral estoppel can only be used when parties are the same or parties are in privity).
[19] Doc. No. 241, Exh. O.
[20] *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 307 (D.N.J. 2012) (emphasis added).
[21] *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (string citations omitted) (emphasis added).

Flaster relies on two cases decided by the New Jersey District Court[22] to argue ATN cannot sustain its tort claims because the Debt Cancellation and Release Agreement bars ATN from pursuing these tort claims based on the canceled debt. If the debt owed by Carpenter was cancelled or released by ATN, the argument goes, ATN then cannot sue Flaster to recover the same monies paid on behalf of Carpenter under the Allen/Carpenter settlement agreement. ATN voluntarily gave up its right to pursue these damages.

Both *B&M Auto Salvage* and *Woodend*, however, are factually and legally dissimilar from our case. As ATN notes and the Court agrees, these cases deal with tortious interference claims and stand for the proposition that a party may not sue for tortious interference under a contract that the party itself canceled. That proposition does not mean ATN gave up its right to pursue *all* damages based on its alleged tort claims, which are not tortious interference claims.

In ruling on summary judgment motions, courts must weigh the evidence in a favorable light to the nonmoving party, here ATN. With this principle in mind, remaining material factual disputes exist over key provisions of the Allen/Carpenter settlement agreement.[23] For example, the parties dispute whether Carpenter "borrowed" money from ATN, who purchased the Allen stock, and whether Carpenter "assumed" certain shareholder loans.[24] Under Freeman's control, ATN forgave Carpenter's debts in 2000. That fact *alone* cannot determine that ATN suffered *no* damages because of Flaster's alleged tortious actions in 1999. Proximate cause typically is a jury

---

[22] *B & M Auto Salvage & Towing, LLC v. Township of Fairfield*, No. CIV.A. 11-2107 JEI, 2013 WL 5434717, at *7 (D.N.J. Sept. 27, 2013), *aff'd*, 588 F. App'x 193 (3d Cir. 2014) ("Although Plaintiffs often gloss over this undisputed fact, Mr. Hoffman voluntarily cancelled his contract with Rulyn's Garage LLC. As such, a claim for tortious interference cannot lie."). See also Woodend v. Lenape Reg'l High Sch. Dist., 535 F. App'x 164, 167–68 (3d Cir. 2013) ("The District Court also properly dismissed Woodend's claim against Gushue for tortious interference with a contract. A tortious interference claim requires a plaintiff to allege (1) a protected interest or contract; (2) malicious interference; (3) a reasonable likelihood that the interference caused the loss of prospective gain; and (4) damage from the injury. … The District Court correctly concluded that Gushue's conduct could not have caused a loss of future gain because the loss was caused by Woodend's voluntarily resignation.") (internal citations omitted).

[23] Doc. No. 264. ATN also continues to rely on prior judicial rulings to which Flaster was not a party. *In re Se. Banking Corp.*, 69 F.3d at 1552. The Court is not accepting those holdings against Flaster, but ATN should be able to resolve its noted factual disputes at trial, and both parties will be able to properly present their cases.

[24] Doc. No. 264.

question when a factual dispute exists.[25] Flaster has failed to show that ATN cannot prove causational damages, as a matter of law. The Bankruptcy Court recommends that the District Court deny Flaster's Motion for Summary Judgment on Counts VIII and IX of the Second Amended Consolidated Complaint.[26]

### ###

Attorney, Dennis Waggoner, is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

---

[25] *Melone v. Jersey Central Power & Light Co.*, 18 N.J. 163, 170 (N.J. 1955).
[26] Doc. No. 241.