ORDERED.

Dated:  January 31, 2018

_____
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ADVANCED TELECOMMUNICATION NETWORK, INC., | ) ) | Case No. 6:03-bk-00299-KSJ Chapter 11 |
| | ) | |
| Debtor. | ) ) | |
| | ) | |
| ADVANCED TELECOMMUNICATION NETWORK, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Adversary No. 6:05-ap-00006-KSJ |
| FLASTER/GREENBERG, PC, and PETER R. SPIRGLE, | ) ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION TO GRANT
ATN'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I**
*(Flaster may not use the mere conduit defense as an initial transferee.)*

Plaintiff, Advanced Telecommunication Network, Inc. ("ATN"), requests[1] partial summary judgment[2] on Count I of its Second Amended Complaint[3] that seeks recovery of a $6 million transfer under § 550 of the Bankruptcy Code.[4] The Eleventh Circuit Court of Appeals already has avoided the transfers made by ATN to its shareholders, brothers—Daniel and David Allen (the "Allens")—as constructively fraudulent under § 544 of the Bankruptcy Code.[5] The specific issue raised by ATN's Motion for Partial Summary Judgment is whether one of the Defendants,[6] a law firm, Flaster/Greenberg, P.C. ("Flaster"), who represented the Allens, may rely upon the affirmative defense of "good faith" in alleging they were "mere conduits" of the transferred monies and not the "initial transferee." The Bankruptcy Court recommends that the District Court grant ATN's Motion for Partial Summary Judgment and conclude that Defendants are not mere conduits.

**Summary Judgment Standard**

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] The moving party must establish the right to summary judgment.[8] A "material" fact is one that "might affect the outcome of the suit under the governing law."[9] A "genuine"

---

[1] ATN more precisely asks for a "report and recommendation" because the District Court will try this adversary proceeding before a jury and the issues involve mixed core and non-core claims. As such, the District Court, not the Bankruptcy Court, must issue any Final Judgment. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 191 L. Ed. 2d 911 (2015); *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 189 L. Ed. 2d 83 (2014); *Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011).

[2] Doc. No. 259 (the "Motion"). Defendant responded. Doc. No. 262 (the "Response"). ATN replied. Doc. No. 271 (the "Reply").

[3] Doc. No. 139 (the "Complaint").

[4] All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101 (2012) *et. seq*. Doc. No. 385 in Adversary Proceeding 6:03-ap-122-KSJ is the Second Amended Final Judgment against Defendants Daniel Allen and David Allen in the amount of $6 million. The Second Amended Final Judgment avoids the $6 million transfer. *Id.* at ¶ 2.

[5] Doc. No. 385 in 6:03-ap-122-KSJ.

[6] A second defendant, Peter Spirgle, was an attorney at Flaster, who assisted in the representation of the Allens. ATN does not allege that Spirgle individually was the initial transferee of any transfer.

[7] Fed. R. Civ. P. 56(a).

[8] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *Find What Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011).

dispute means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10] Once the moving party has met its burden, the nonmovant must set forth specific facts showing there is a genuine issue for trial.[11] In determining entitlement to summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[12]

## Background

Because the transfers occurred in 1999, almost 20 years ago, and because substantial litigation precedes this dispute, a brief discussion of the past litigation is merited. Daniel Allen and Gary Carpenter, who equally shared all of ATN's voting shares, founded ATN in 1989 as a long-distance reseller of telecommunication services.[13] The company purchased long distance telephone service in bulk from larger carriers and resold it to their customers. A bitter management dispute erupted between Carpenter, ATN's President, and Daniel Allen resulting in hard fought litigation in New Jersey. A trial commenced in November 1998. Flaster represented Daniel Allen.

Daniel Allen and Carpenter signed a handwritten settlement agreement on December 23, 1998, and then a more formal written settlement agreement on January 12, 1999. ATN was to pay Flaster $1.35 million for the Allen attorney fees and costs in the New Jersey litigation. ATN also paid the Allens an additional $6.25 million in settlement of their dispute with Carpenter.[14] The monies were paid directly by ATN to the Flaster law firm who kept $1.35 million for its fees and

---

[10] *Anderson*, 477 U.S. at 248.
[11] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 10 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, (1986).
[12] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).
[13] The background is largely parsed from the Eleventh Circuit of Appeals opinion of *Advanced Telecommunication Network, Inc. v. Allen (In re Advanced Telecommunication Network, Inc.)*, 490 F. 3d 1325 (11th Cir. 2007).
[14] For example, exhibits show that wire transfers to Flaster occurred on January 12, 1999 ($1.25 million), January 29, 1999 ($250,000), and June 1, 1999 ($6 million). Doc. 180, Ex. 37. The settlement agreement also contained other terms, such as releases, that may have transferred additional value between the parties. The focus of Count I of the Complaint is on the $6 million transfer.

sent the balance to the Allens. (It is this money received by the Allens that ultimately was avoided as a constructive fraudulent transfer (the "Avoided Transfer")).

After the settlement, Carpenter was the sole shareholder of ATN and remained President for a short time. Beginning in 1995 and simultaneously with the shareholder litigation, ATN had disputed a contract with a competitor, WATS/800, Inc., a company controlled by Damian Freeman. In October 2000, Carpenter settled this dispute relinquishing his interest in ATN to Damian Freeman, who still controls ATN today.

ATN/Freeman filed this Chapter 11 bankruptcy on January 10, 2003, and confirmed a Plan of Reorganization[15] contemplating litigation against the Allens[16] and their lawyers to recover the monies paid in the 1999 settlement between the Allens and Carpenter. Freeman relentlessly has pursued his lawsuits beginning first with the Allens and now turning his attention to Flaster. The multi-year dispute has traveled to the Eleventh Circuit Court of Appeals twice[17] and, for the Allens' individual bankruptcy cases in New Jersey, the Third Circuit Court of Appeals.[18] But, to summarize, no dispute exists that the Avoided Transfer order is final. The Allens and Daniel's wife Stacy Allen have received discharges of any liability to ATN and now are assisting Freeman in pursuing his claims in this adversary proceeding.

[space intentionally left blank]

---

[15] Doc. No. 1 in Main Case No. 6:03-bk-00299-KSJ. Doc. No. 153 in the Main Case is the Chapter 11 Plan of Reorganization. The Court confirmed the Plan on June 22, 2004. Doc. No. 215 in the Main Case.
[16] Adversary Number 6:03-ap-00122-KSJ, Advanced Telecommunication Network, Inc. v. Daniel W. Allen and David D. Allen.
[17] *In re Advanced Telecomm. Network, Inc.,* 429 F. App'x 857 (11th Cir. 2011); *In re Advanced Telecomm. Network, Inc.*, 490 F.3d 1325 (11th Cir. 2007).
[18] *In re Allen*, 768 F.3d 274 (3d Cir. 2014). Daniel Allen's individual bankruptcy case was filed in the United States Bankruptcy Court for the District of New Jersey (Case No. 11-37671 (GMB)). Daniel's wife, Stacy Allen, filed an individual bankruptcy case in the United States Bankruptcy Court for the District of New Jersey (Case No. 13-14348 (GMB)).

## **Flaster Is Not a Mere Conduit of the Avoided Transfer**

ATN argues Flaster is the *initial transferee* of the Avoided Transfer. If so, ATN may recover the transfer from Flaster under § 550(a) of the Bankruptcy Code. Flaster argues it acted as a "*mere conduit*" when it accepted the $6 million Avoided Transfer into the firm's bank account.

The Bankruptcy Code does not define "transferee" or "initial transferee." The Eleventh Circuit Court of Appeals has "observed that a literal or rigid interpretation of the statutory term 'initial transferee' in § 550(a) means that the first recipient of the debtor's fraudulently-transferred funds is an 'initial transferee.'"[19] The Eleventh Circuit, however, has "carved out an equitable exception to the literal statutory language of 'initial transferee,' known as the mere conduit or control test, for initial recipients who are 'mere conduits' with no control over the fraudulently-transferred funds."[20] The Eleventh Circuit concluded that:

> [G]ood faith is a requirement under this Circuit's mere conduit or control test. Accordingly, initial recipients of the debtor's fraudulently-transferred funds who seek to take advantage of equitable exceptions to § 550(a)(1)'s statutory language must establish (1) that they did not have control over the assets received, i.e., that they merely served as a conduit for the assets that were under the actual control of the debtor-transferor *and* (2) that they acted in good faith and as an innocent participant in the fraudulent transfer.[21]

"The Eleventh Circuit has stressed [also] that 'courts must look beyond the particular transfers in question to the entire circumstance of the transfers.' In other words, courts must step back and evaluate a transaction in its entirety to make sure that the court's conclusions are logical and equitable."[22]

---

[19] *Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312 (11th Cir. 2010) (quoting *In re Chase & Sanborn Corp.*, 848 F.2d 1196, 1199 (11th Cir. 1988)).
[20] *In re Harwell*, 628 F.3d at 1322.
[21] *Id.* at 1323.
[22] *Hyman v. Bast Amron LLP (In re Cargo Transportation Servs., Inc.)*, 502 B.R. 875, 879 (Bankr. M.D. Fla. 2013) (internal citations and some quotation marks omitted)

Lawyers representing clients rarely are deemed "initial transferees." As the Eleventh Circuit noted:

> In the vast majority of cases, a client's settlement funds transferred in and out of a lawyer's trust account will be just like bank transfers, and lawyers as intermediaries will be entitled to mere conduit status because they lack control over the funds. Mere conduits, such as lawyers and banks, do not have an affirmative duty to investigate the underlying actions or intentions of the transferor.[23]

This equitable doctrine however has limits. A professional who has demonstrated a lack of good faith cannot rely on the mere conduit exception to escape liability as an initial transferee.[24] For example, a bank that has "extensive knowledge of the debtor's [transferor's] deteriorated financial condition and voidablity of the transfer" forfeits its good faith status if they are first in line to receive a transfer.[25] The test is an *objective* standard requiring courts to analyze what a transferee "knew or should of known" not the transferee's actual knowledge from a subjective standpoint.[26] A person cannot act in "good faith" if he knows or should have known of the transferor's unfavorable financial condition at the time of the transfer.[27]

### **Flaster Cannot Objectively Demonstrate Good Faith**

Flaster's own words and actions demonstrate that they had extensive knowledge of ATN's deteriorating financial condition when they received the $6 million Avoided Transfer. Relying exclusively on the trial brief prepared by Flaster[28] and the trial transcript from the trial held on November 11, 1998,[29] the Court finds that Flaster said or acted to:

---

[23] *In re Harwell*, 628 F.3d at 1324.
[24] *Id.*
[25] *Brown v. Third Nat'l Bank (In re Sherman)*, 67 F.3d 1348, 1356 (8th Cir. 1995) (determining that bank was unable to use the protection of § 550(b) of the Bankruptcy Code because of its extensive knowledge).
[26] *Goldman v. Capital City Mortgage Corp. (In re Nieves)*, 648 F.3d 232, 238 (4th Cir. 2011) (determining that good faith for the purposes of § 550(b)(1) defense analyzes what the transferee knew or should have known).
[27] *In re O'Connell*, 119 B.R. 311, 317 (Bankr. M.D. Fla. 1990) (In the context of Section 550(d)(1)(A), the Court held the defendants could not be good faith transferees because they had knowledge of the poor financial condition of the Debtor).
[28] Doc. No. 180, Exh. 27, dated October 23, 1998.
[29] Doc. No. 180, Exh. 30.

- "The very viability of ATN is seriously called into question."[30]

- "ATN has been in a serious state of decline…to the point were in 1997 the losses exceeded $2 million by November of 1997."[31]

- "Carpenter has destroyed what was once a profitable company."[32]

- "The reality is, however, that the patient [ATN] is fading rapidly. Nero (Carpenter) fiddled while Rome [ATN] burned…A receiver for the purposes of dissolution must be appointed by this Court."[33]

- Seek appointment of a receiver mid-trial because ATN's financial condition was "so dire that there's a fear that the doors may close at any moment."[34]

These are merely selected excerpts from an extensive trial brief, dated October 23, 1998, and trial testimony/colloquy from November 11, 1998, that overwhelmingly demonstrates Flaster had detailed information repeatedly published to the trial court, and that ATN was in "dire financial straits" and was facing probable insolvency and closure.

Yet, a few weeks later, on December 23, 1998, and January 12, 1999,[35] Flaster assisted their clients with a settlement agreement requiring ATN to pay substantial monies to Flaster and the Allens. These payments were paid directly by ATN to Flaster between January 12, 1999, and June 2, 1999. Flaster accepted these monies with full knowledge of ATN's precarious financial condition. By doing so, the firm lost any right to claim "good faith" or to rely on the equitable exception, allowing a "mere conduit" to escape liability as the initial transferee of a fraudulent transfer.

---

[30] Doc. No. 180, Exh. 27, p. 44.
[31] *Id*.
[32] *Id*. at p. 48.
[33] *Id*. at p. 95.
[34] Doc. No. 180, Exh. 30, Bates Stamped p. 14875.
[35] The settlement agreement was executed informally on December 23, 1998, and formalized in a more legally complete version on January 12, 1999. Doc. No. 180, Exhs. 31 and 32.

Flaster argues it was just zealously representing its clients. The Eleventh Circuit Court of Appeals, however, already has said that a lawyer crosses the line and is not a mere conduit when he or she is no longer "an innocent participant in the transfers."[36] Here, Flaster's own words in its trial brief are damning, showing a detailed knowledge that ATN had significant losses, extensive creditors, limited cash reserves, and was on the verge of closing its doors. Yet, they still agreed to accept millions in payments from ATN, of which they kept $1.35 million.

Flaster next argues good faith is a factual issue requiring courts to consider the totality of circumstances surrounding the parties' actions. Although this is a correct standard and summary judgment is rare in this circumstance, Flaster ignores that the good faith test is an *objective*, not *subjective*, test. No further factual investigation is needed when any reasonable third party would conclude, based exclusively on Flaster's own statements, that ATN was financially failing[37] and could not afford the questionable transfers under the settlement agreement. Nor does it matter that Flaster did not believe ATN was insolvent because the test is not a subjective inquiry. Defendants affirmatively stated, repeatedly, the impoverished condition of ATN when the questionable transfers were made. Their statements, standing alone, are more than sufficient to objectively find the Defendants were not acting in good faith when they accepted the settlement monies.

Flaster lastly challenges the authenticity of the documentary evidence submitted by ATN, specifically the forty-seven page Verified Statement of Facts signed by Damian Freeman. The Verified Statement of Facts also attaches hundreds of pages of documents.[38] Given that the Court relied exclusively on the Defendants' own admissions and statements, this evidentiary objection is a red herring. Flaster cannot escape the consequences of its own statements by challenging the

---

[36] *In re Harwell*, 628 F.3d at 1324.
[37] The Court makes no determination as to ATN's legal solvency or insolvency. The Court separately will deny ATN's Motion for a Report and Recommendation that ATN was insolvent on the date of the transfers. Flaster was not a participant in the solvency litigation post-petition. ATN cannot rely solely on prior judicial rulings against other parties to demonstrate ATN's insolvency. Flaster is entitled to its "day in court" on this important factual issue.
[38] Doc. No. 180.

admissibility of an affidavit and supporting documents that the Court never considered. Again, Flaster's own words are all that is needed to conclude that, as a matter of law, Flaster was more than the "mere conduit" of the Avoided Transfer.

This report and recommendation, however, does not resolve all issues raised by Count I of ATN's Second Amended Complaint. Defendants assert that ATN is judicially estopped from asserting Flaster is the initial transferee of the Avoided Transfer. ATN previously took a contrary position with prior courts repeatedly arguing the Allens were initial transferees. Defendants assert ATN now is judicially estopped from changing positions. The parties do not seek summary judgment on this issue. As such, even though the Bankruptcy Court recommends that the District Court enter partial summary judgment finding that Flaster is not a "mere conduit," the firm still may not be the "initial transferee."

### **Conclusion and Recommendation**

By credibly arguing that Flaster was not an "innocent participant" and did not act in "good faith," Flaster may not use the mere conduit equitable exception under § 550(a) of the Bankruptcy Code. The Court recommends that the District Court enter partial summary judgment for ATN and against Flaster as a matter of law, finding no material facts in dispute.

###

Attorney, Jason Baruch, is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.