UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re: Advanced Telecommunication
Network, Inc.,

    Debtor.

---

ADVANCED TELECOMMUNICATION
NETWORK, INC.,

    Plaintiff,

v.

FLASTER/GREENBERG, P.C., et al.,

    Defendants.

Case No: 6:18-cv-1186-Orl-28GJK

Bankr. Ct. Case No. 6:03-bk-299-KSJ
Adv. Proc. No. 6:05-ap-00006-KSJ
Adv. Proc. No. 6:11-ap-00008-KSJ

## ORDER

Plaintiff Advanced Telecommunication Network, Inc. (ATN) filed a Motion for Partial Summary Judgment (Bankr. Doc. 246), seeking partial summary judgment on the issue of ATN's solvency. Specifically, ATN urges this Court to find, as a matter of law, that ATN was insolvent during the time periods relevant to this case. On January 31, 2018, the then-assigned United States Bankruptcy Judge submitted a Report (Bankr. Doc. 304) recommending that ATN's Motion for Partial Summary Judgment be denied. Specifically, the Report recommends denying the motion because Defendants Flaster Greenberg, P.C. and Peter Spirgel "raise a material factual dispute on ATN's insolvency and challenge the admissibility of ATN's supporting evidence it was insolvent in 1999." (Id. at 6). According to the Report, ATN's attempts to rely on prior judicial rulings to establish insolvency are improper because Defendants were not part of that litigation. (See id. at 5).

In response to the Report, ATN filed an Objection (Bankr. Doc. 307),[1] urging this Court to reject the bankruptcy court's recommendation because: (1) the issue of insolvency has already been decided by the Eleventh Circuit; (2) the report makes improper solvency calculations; and (3) ATN has provided sufficient evidence to prove insolvency at this stage of the case.[2] Defendants filed a Response (Bankr. Doc. 311), arguing that this Court should adopt the Report because the Eleventh Circuit has not decided the insolvency issue and genuine issues of material fact remain. After conducting the statutorily prescribed de novo review—during which this Court reviewed the record, the submissions of the parties, and the relevant case law—this Court agrees with the conclusions in the Report and Recommendation.

---

[1] A bankruptcy judge is permitted to hear a proceeding related to a pending bankruptcy case. See 28 U.S.C. § 157(c)(1). After hearing such a proceeding, the bankruptcy judge is required to "submit proposed findings of fact and conclusions of law to the district court" so the district court may issue an appropriate final order. Id. Before issuing that final order, the district court is instructed to review "de novo those matters to which any party has timely and specifically objected." Id.

[2] ATN also alleges that the bankruptcy judge's Report "violates binding New Jersey Supreme Court precedent." (Bankr. Doc. 307 at 3). According to ATN, the bankruptcy judge "confused the test for insolvency by triggering a burden-shift only upon ATN's showing of *conclusive* insolvency, rather than *presumptive* insolvency." (Id. at 9 (emphasis in original)). This, says ATN, "undermines the entire line of reasoning in the Report." (Id.). The bankruptcy judge's scrivener's error does no such thing. While the bankruptcy judge's Report did incorrectly state that the burden would shift after a finding of conclusive insolvency, even a cursory review of the surrounding circumstances reveals that this error was nothing more than a typographical error. The footnote following the sentence containing the error cites to the proper standard as articulated in In re Advanced Telecommunication Network, Inc., 490 F.3d 1325, 1333 (11th Cir. 2007). And lest there remain any doubt, the bankruptcy judge then followed that citation with a quoting parenthetical that correctly stated the legal standard in its entirety. Therefore, ATN's assertion that the bankruptcy judge's typographical error tainted the entire Report is not well-taken.

In these adversary proceedings, ATN seeks to set aside several fraudulent transfers under New Jersey law. As noted by the bankruptcy court, "[e]ach claim ATN asserts involves, directly or indirectly, the question of legal insolvency." (Bankr. Doc. 304 at 4). Legal solvency is critical to this case because it is an element of the fraudulent transfer causes of action. See In re Advanced Telecomm. Network, Inc., 490 F.3d 1325, 1331 (11th Cir. 2007) ("Under New Jersey law, a corporation's transfer of cash to its shareholders is fraudulent if (1) the transferor . . . made the transfer while insolvent, and (2) the transferor received less than 'a reasonably equivalent value' in exchange." (quoting N.J. Stat. Ann. § 25:2-27.a)).

New Jersey law "recognizes both presumptive and conclusive insolvency." Id. at 1332. Presumptive insolvency results when a "debtor . . . is generally not paying his debts as they become due." Id. (quoting N.J. Stat. Ann. § 25:2-23.b). Conclusive insolvency results if a debtor's "debts exceed the fair value of his assets." Id. (citing N.J. Stat. Ann. § 25:2-23.a); see also Motorworld, Inc. v. Benkendorf, 156 A.3d 1061, 1070 (N.J. 2017) ("A debtor is deemed insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation." (internal quotation marks omitted)). Once it is established that an entity is presumptively insolvent, the burden shifts to the opposing party to prove the entity was "conclusively solvent under a balance sheet test . . . notwithstanding the fact that it had not paid its debts as they [came] due." In re Advanced Telecomm. Network, 490 F.3d at 1333 (emphasis omitted) (citations omitted). New Jersey law requires courts conducting insolvency analyses to include in the valuation calculus "claims[3] against the

---

[3] "Under New Jersey law, a 'claim' means 'a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

3

debtor," including a "fair [valuation] of . . . contingent liability . . . discounted according to the possibility of its ever becoming real." Id. at 1335 (internal quotation marks omitted).

The starting point for the Court in resolving ATN's Objection is an understanding that this particular legal issue and the stage of the proceedings matter immensely. See In re Transit Grp., Inc., 332 B.R. 45, 55 (Bankr. M.D. Fla. 2005) ("[I]ssues relating to solvency generally are not susceptible to summary judgment because factual disputes usually exist . . . ."). Thus, ATN is only entitled to summary judgment if, when viewed in the light most favorable to Defendants, the evidence reveals no "genuine factual issues that properly can be resolved only by a finder of fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Bearing all this in mind, the Court now turns to ATN's objections.

ATN's first asserted error is that "the Report conflated collateral estoppel with *stare decisis*." (Bankr. Doc. 307 at 3). In asserting this error, ATN repeatedly argues that the Eleventh Circuit has already found that ATN was insolvent on the dates in question. (See id. at 7–8). According to ATN, *stare decisis* thus mandates a finding of insolvency as a matter of law. (See id. at 8 ("ATN's citations to the Eleventh Circuit's opinion triggered *stare decisis*, that is, like facts receiving like treatment in a court of law.")). But the Eleventh Circuit did not hold that ATN was insolvent—either presumptively or conclusively—on the dates in question.

On the issue of presumptive insolvency, the Eleventh Circuit noted that "the bankruptcy court was right in finding that ATN meets the test of presumptive insolvency." In re Advanced Telecomm. Network, 490 F.3d at 1332. That holding, though, was based

---

unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.'" In re Advanced Telecomm. Network, 490 F.3d at 1335 (quoting N.J. Stat. Ann. § 25:2-21).

4

on the evidence presented to the bankruptcy court in ATN's proceeding against the Allens.[4] See id. at 1332–33 (describing the evidence relating to presumptive insolvency, including statements from company leadership regarding the impact the Settlement Agreement would have on the payment of ordinary bills). While ATN has presented the same evidence here, Defendants too have presented evidence on this issue. Critically, Defendants have identified deposition testimony from Gary K. Carpenter, the then-CEO of ATN, in which he refutes the allegation that ATN was not paying its bills as they came due. (See Bankr. Doc. 261 at 7–8 (citing Carpenter's deposition testimony, in which he answered "yes" when asked if ATN was paying its bills and operating normally during the relevant time periods)). Thus, the evidence now before the Court on the issue of presumptive insolvency is different from the evidence reviewed by the Eleventh Circuit in the Allen litigation, thereby undercutting ATN's *stare decisis* argument. Moreover, the evidence reveals genuine disputes of material fact. Summary judgment on the presumptive insolvency issue is therefore inappropriate.

On the issue of conclusive insolvency, the Eleventh Circuit's opinion does not go as far as ATN claims. Again, ATN asserts that the bankruptcy court "glossed over binding precedent on essentially identical facts." (Bankr. Doc. 307 at 3). This is not accurate. The Eleventh Circuit's opinion did not hold that ATN was conclusively insolvent during the relevant time periods. Rather, the Eleventh Circuit held that two of the three calculations done by the bankruptcy court regarding ATN's bottom line were incorrect. See In re Advanced Telecomm. Network, 490 F.3d at 1336 (noting that the bankruptcy court

---

[4] The Allens were the ultimate recipients of the money paid by ATN as part of the Settlement Agreement. ATN first attempted to recover the funds from the Allens. Now, ATN seeks to recover the funds from Defendants.

5

substantially "overvalued the company" by failing to properly calculate two of the three adjustments). But the fact that—as detailed by the Eleventh Circuit—the bankruptcy court improperly made the adjustments does not *necessarily* mean that ATN was insolvent—it just means it was overvalued. A footnote directly after this portion of the Eleventh Circuit's opinion underscores this point. In that footnote, the court noted that "[o]n remand, it is possible that the [bankruptcy] court will again conclude that the company was solvent." Id. n.16. Thus, the Eleventh Circuit did not hold that ATN was conclusively insolvent. And genuine disputes of material fact exist on this issue. Defendants' expert witness opines—and provides a report showing—that ATN was conclusively solvent at the time in question. ATN disputes this. Summary judgment is thus inappropriate.

The bankruptcy court is the only court that found ATN insolvent as part of the Allen litigation. ATN is attempting to offensively use that judgment against Defendants, who were not parties to that case. If anything, this would constitute issue preclusion rather than *stare decisis*. But ATN's disguised attempt to invoke the doctrine of issue preclusion must fail. See CSX Transp., Inc. v. Bhd. of Maint. of Way Emps., 327 F.3d 1309, 1317 (11th Cir. 2003) (noting that "the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding" (quoting I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir. 1986))); see also Schiro v. Farley, 510 U.S. 222, 232 (1994) (noting that issue preclusion means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated *between the same parties* in any future lawsuit" (emphasis added) (internal quotation marks omitted)); Allen v. McCurry, 449 U.S. 90, 95 (1980) (noting that the Supreme Court has repeatedly recognized that the doctrine of issue preclusion is

6

limited in that it "cannot apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate that issue in the earlier case" (internal quotation marks omitted)). By ATN's own choosing, Defendants were not part of the earlier litigation. Therefore, ATN's attempt to preclude Defendants from litigating the solvency issue is inappropriate.

ATN next asserts that the bankruptcy court erred in failing to decide "whether ATN was presumptively insolvent." (Bankr. Doc. 307 at 4). In reviewing the Report, it appears the bankruptcy judge assumed that ATN met its burden to demonstrate that it was presumptively insolvent.[5] The bankruptcy court then focused its analysis on conclusive insolvency. ATN objects to the Report's lack of findings on the presumptive insolvency issue. That objection triggers a de novo review by this Court. And as discussed above, the Court finds genuine disputes of material fact exist relating to the issue of presumptive insolvency.

ATN's final grouping of errors can best be summarized as objections to various calculations used by Defendants' expert witness in his report. Specifically, ATN asserts that the expert's report: (1) failed to calculate solvency at the time of the transfer as required by law; (2) failed to appropriately value a loan Carpenter made to ATN; and (3) failed to perform a "*Xonics* analysis."[6] (See id. at 4–5). ATN faults the bankruptcy court for failing

---

[5] Footnote 2 explains why the bankruptcy court's typographical error on this point did not impact the final analysis.

[6] A "*Xonics* analysis" is a method used to determine the "fair value of a contingent liability." In re Advanced Telecomm. Network, 490 F.3d at 1335 (internal quotation marks omitted). In re Xonics Photochemical, Inc. is the leading case on the method. 841 F.2d 198 (7th Cir. 1988); accord In re Advanced Telecomm. Network, 490 F.3d at 1335.

7

to adjust the expert's calculations in order to cure these alleged defects. ATN argues that when the expert's calculations are recalibrated, no genuine disputes of material fact exist.

But at this stage, it is not for the Court to discount or weigh the credibility of the expert's findings. See Moore v. Geico Gen. Ins. Co., 633 F. App'x 924, 931 (11th Cir. 2016) (noting that at the summary judgment stage the court should not "simply ignore the testimony [of the expert] or deem the expert not credible" but rather should follow the usual procedures to evaluate the expert report for admissibility in accordance with Federal Rule of Evidence 702). It is settled law in the Eleventh Circuit that an expert report can be used to create a genuine issue of material fact that precludes summary judgment. See id. (noting that the proposition that an expert report cannot create a genuine dispute of material fact is "simply incorrect" (citing Newmann v. United States, 938 F.2d 1258, 1262 (11th Cir. 1991))). In fact, cases relying on expert witnesses are often not amenable to decision at the summary judgment stage. See Childers v. Morgan Cty. Bd. of Educ., 817 F.2d 1556, 1559 (11th Cir. 1987) ("Cases which rely heavily on expert testimony . . . do not easily lend themselves to summary judgment."); see also Webster v. Offshore Food Serv., Inc., 434 F.2d 1191, 1193 (5th Cir. 1970) ("[T]he grant of a motion for summary judgment is often inappropriate where the evidence bearing on crucial issues of fact is in the form of expert opinion testimony." (citations omitted)).

While a party may challenge the admissibility of an expert's report in accordance with the evidence rules, it may not, on a motion for summary judgment, ask a court to evaluate the expert's credibility or ignore the expert's evidence altogether. See Moore, 633 F. App'x at 931; see also Webster, 434 F.2d at 1193 ("[O]nce 'the court admits (expert) testimony, then it is for the jury to decide whether any, and if any what, weight is

8

to be given to the testimony.'" (quoting Sartor v. Ark. Nat. Gas Corp., 321 U.S. 620, 627 (1944))). ATN asks this Court to make such a credibility determination. ATN does not challenge the admissibility of the evidence of Defendants' expert. In fact, ATN seeks to use the expert's evidence in its favor, dedicating an entire section of its Objection to arguing that it may use Defendants' expert report to support its motion. (See Bankr. Doc. 307 at 23–24). At bottom, ATN asks this Court to make various calculations to correct the alleged erroneous report of the expert. That is a credibility determination that the Court may not undertake at this stage of the proceedings. See Webster, 434 F.2d at 1193 (noting that the trier of fact is to make determinations regarding the credibility of the expert's evidence).

When the evidence is viewed in the light most favorable to Defendants, the non-moving parties, genuine disputes of material fact exist relating to both presumptive and conclusive insolvency. Accordingly, ATN's Objection (Bankr. Doc. 307) to the Report and Recommendation is **OVERRULED**, and it is **ORDERED** as follows:

1. The Report and Recommendation (Bankr. Doc. 304) is **ADOPTED** and **CONFIRMED** and made a part of this Order.

2. ATN's Motion for Partial Summary Judgment (Bankr. Doc. 246) on the insolvency issues is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on September 26, 2018.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties